## UNITED STATES DISTRICT COURT
## EASTERN OF LOUISIANA

| | |
|---|---|
| **ROCHELLE PRICE,** | **CIVIL ACTION:** |
| **VERSUS** | **JUDGE:** |
| **BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM, ALEXANDER C. BARNES, ALISON HADAWAY, and CHRISTY R. HAWXHURST** | **MAGISTRATE JUDGE:** |
| | **JURY TRIAL DEMAND** |

### COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Petitioner, Rochelle Price, and who brings this Complaint against the below-named Defendant, with full reservation of rights to plead further herein, and in support thereof alleges the following:

### I. PARTIES

1. Plaintiff made herein is Rochelle Price, also known as Rochelle Bonvillain, (hereinafter referred to as "Officer Price"), who is a person of the full age of majority, having the requisite mental capacity to bring this lawsuit, and presently residing and domiciled in Lafayette Parish, Louisiana.

2. Defendants made herein are:

   A. **BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM**, which is mandated to exercise all power to direct control, supervise and manage the Nicholls State University located in Thibodaux, Louisiana (hereinafter referred to as "Nicholls State University." The Board is a public corporation appointed by the Governor of the State of Louisiana, which is charged with governing the campus of the University of Louisiana systems, of which Nicholls University is a part;

   B. **ALEXANDER C. BARNES**, Nicholl's State University Police Department Chief, in his individually, as well as his official capacity as the Nicholl's State

1

University Police Department Chief, State of Louisiana, located in the Parish of Lafourche. Nicholl's State University Police Department Chief appoints, suspends or removes all employees and officers who are employed Nicholl's State University Police Department, such as the Chief of Police, was and is a final policy maker for the Department, wherein he resides and is domiciled in the Eastern District of Louisiana;

C. **ALISON HADAWAY**, in her individually, as well as her official capacity as the Director of Human Resources at Nicholl's State University, located in the Parish of Lafourche, wherein she resides and is domicile in the Eastern District of Louisiana;

D. **CHRISTY R. HAWXHURST**, in her individually, as well as her official capacity as the Lieutenant Officer at Nicholl's State University Police Department, located in the Parish of Lafourche, wherein she resides and is domiciled in the Eastern District of Louisiana.

## II. JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) as Plaintiff's claims against Defendant arise under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000 *et seq.*, violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.,* as amended by the ADA Amendments Act of 2008 ("ADA").

4. The claims based on Louisiana state law are so closely related to claims raising federal questions that they form part of the same case or controversy, such that this Honorable Court has supplemental jurisdiction over said matters pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court because the violations of federal and state laws upon which this Complaint is based occurred in Terrebonne Parish, which is located in the Eastern District of the United States District Courts of Louisiana. Further, Officer Price's Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000 *et seq*., and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.,* claims is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because the alleged discriminatory employment practices occurred within this

forum (specifically Terrebonne Parish), and, alternatively, Officer Price used to live in this forum (specifically, Terrebonne Parish) and Officer Price's claim does not involve real property.

### III. PROCEDURAL AND STATUTORY ALLEGATIONS

6. At all relevant times, and upon information and belief, the Nicholls State University (hereinafter referred to as "Nicholls State University") employed more than 100 employees.

7. At all times herein, Officer Price was continuously employed with Nicholls State University starting on January 8, 2024 through May 4, 2024.

8. On September 22, 2024, Officer Price timely initiated a EEOC Charge No. 461-2024-03857, alleging that, among other things, she was subjected to Officer Price, who has been wrongfully retaliated against on May 4, 2024 through from events arising from latest hostile work environment, continuous violation of ADA policies, violation of Police Officer's Bill of Rights, retaliation ADA violation since on or about January 15, 2024, and in reprisal for prior protected activity.

9. During the relevant period, Officer Price worked as a Police Officer 1 for Nicholl's State University at the Nicholls State University.

10. On September 25, 2024, USPS issued Officer Price a Dismissal of Charge and Notice of Right to Sue regarding this matter, which was not received until November 10, 2024.

11. Officer Price timely filed this federal complaint within 90 days of her receipt of the EEOC final Nicholls State University.

### IV. FACTUAL ALLEGATIONS

A. **The Board of Supervisors of the University of Louisiana System, Nicholls State University, Policies, Louisiana Police Officer Bill of Rights.**

12. A state agency created by the 1975 Louisiana Constitution, Article VIII, Section 6, named The

Board of Regents, coordinated and still coordinates all public higher education in Louisiana.

13. The Board of Trustees for State Colleges and Universities was established as the managing board for the institutions listed in Act 313 1975 (La. R.S. 17:3217).

14. In 1995, Legislature changed the official name for the Board is now the Board of Supervisors for the University of Louisiana System.

15. The University of Louisiana System is a public, multi-campus university system dedicated to the broad spectrum of educational opportunities ranging from technical training at the associate level to research at the doctoral level for Louisiana and its people.

16. The University of Louisiana System is governed by the operations of the Board of Supervisors in its authority to provide discretion, control, supervision, management, and assistance to the institutions of the University of Louisiana System, including Nicholls State University.

17. Nicholls State University is a public university located in Thibodaux, Louisiana, which was founded in 1948, and now part of the University of Louisiana System.

18. All classified employees of the Nicholls State University are appointed in accordance with the State Civil Service Regulations of the State of Louisiana.

19. The Nicholls State University's *Policy & Procedure Manual* is a guide to the internal regulations, policies, and procedures for all employees at the University.

20. The Rules (Bylaws, and Policies and Procedures) of the Board of Supervisors for the University of Louisiana System are the governing documents that lists policies and procedures for the Board and all of the institutions and employees under the Board's jurisdiction. These rules *supersede* the policies in Nicholls State University's *Policy & Procedure Manual*.

21. The Human Resources Department of Nicholls State University is the central office for maintaining the official personnel records for all faculty and staff of the University.

22. Part of the duties of the Human Resources Department is processing of all employment appointments; advising faculty and staff regarding staffing and employee policies and procedures, compensation, benefits, and state and federal rules and regulations concerning employment; employee relations and staff development including on-site workshops and training, new employee orientation; disseminate information about employee benefits; coordinate worker's compensation claims.

23. Further, the director of Human Resources, Alison Hadaway, is designated and acts as the appointing authority for classified employees at Nicholls State University and is responsible for representing this agency to the Department of Civil Service.

24. Nicholls State University has obligated itself and "is fully committed to ensuring compliance with the requirements of the Americans with Disabilities Act of 1990, its Amending Act of 2008 (collectively ADA), Section 504 of the Rehabilitation Act of 1973, and other state laws and regulations that prohibit discrimination on the basis of disability."

25. Further, Nicholls State University adopted a policy prohibiting workplace discrimination, harassment, and retaliation, pertinent in part: "Nicholls State University (Nicholls) is committed to maintaining an environment free from any type of discrimination, harassment, and retaliation including retaliation for whistle blowing. In furtherance of that commitment, Nicholls has adopted this policy forbidding discrimination, harassment, and retaliation of any kind against any applicant, employee, student, vender, or visitor of Nicholls. This policy forbids discrimination, harassment, and retaliation of any kind by or against any applicant, employee, student, or any other individual on the basis of race, color, gender, religion, sexual orientation, national origin, disability, genetic information, age, and veteran or retirement status."

26. Another policy of Nicholls State University is to be an equal opportunity employer. The policies and procedures comply with the Equal Pay Act of 1963, Title VII of the Civil Rights Act of 1964, Executive Order 11246 of 1965, Title IX of the Education Amendments of 1972, the Age Discrimination in Employment Act of 1967, the Immigration and Reform Act of 1990, the 1993 Family and Medical Leave Act, Section 501, 503, and 505 of the Rehabilitation Action of 1973; Title I and Title V of the Americans with Disabilities Act of 1990; and all Civil Rights Laws of the State of Louisiana; the Civil Rights Act of 1991, and Title II of the Genetic Information Nondiscrimination Act of 2008.

27. Officer Price has been hired as a Police Officer 1 for Nicholl's State University, on or about January 8, 2024, and upon information and belief, she was classified as a permanent staff employee.

28. Per advertisements, a Police Officer 1 for Nicholl's State University is classified as staff and falls under the University Police Department.

29. University Police Department is created for the purpose of maintaining Nicholls State University campus as a safe, secure environment for students, employees, community members and visitors.

30. University Police Department further lists the duties of Police Officer 1 for Nicholl's State University.

31. Chief Alexander C. Barnes is the current duly appointed Chief of University Police of the Nicholls State University.

32. Upon information and belief, the ultimate decision-maker for all administrative, disciplinary, discrimination, and human resources issues is the director of Human Resources, Alison Hadaway and Nicholl's State University Police Department Chief, Chief Alexander C. Barnes.

33. At all relevant times in this lawsuit, the director of Human Resources and Nicholl's State University Police Department Chief, and the ultimate decision-makers for all personnel decisions at Nicholl's State University Police Department are Alison Hadaway and Chief Alexander C. Barnes.

34. University police officers are commissioned by the Louisiana Department of Public Safety.

35. Louisiana Revised Statutes 17:1805 grants university police officers law enforcement powers, authority and responsibilities identical to the local police or parish deputy in one's home community, such as:

    A. Each officer must successfully complete a P.O.S.T. (Peace Officer Standards and Training Council) -certified basic course on law enforcement.

    B. All officers receive additional in-service or specialized training in first aid, CPR, firearms, investigation techniques and in various other areas.

    C. Officers wear uniforms that are provided by the Department.

36. However, officers must supply their own firearm and duty gear. University police officers are entitled to all University benefits, including paid vacation, sick leave, healthcare, vision, dental, and tuition remission.

37. The Louisiana Police Officer Bill of Rights establishes *minimum standards* for investigations. La. R.S. 40:2531(B)(7); *City of Shreveport v. Shreveport Municipal Fire & Police Civil Service Board*, 53,954 (La. App. 2 Cir. 5/26/21), 322 So. 3d 388, *writ denied*, 2021-00905 (La. 10/19/21), 326 So. 3d 263.

38. La. R.S. 40:2531(C) provides:

> There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal or adverse action of any sort

whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

39. Any violation of the six minimum standards set forth in the statute renders the proceedings a nullity. *City of Shreveport*, *supra*; *Coburn v. City of Bossier City*, 09-01970, 2012 WL 2427038 (W.D. La. June 26, 2012); *Washington v. Shreveport Fire & Police Civil Serv. Bd.,* 54,463 (La. App. 2 Cir. 5/25/22, 5–6); 339 So.3d 1276, 1279–80, *writ denied,* 2022-01001 (La. 10/12/22); 348 So.3d 78.

40. The term "possible disciplinary action" should be construed broadly so that the purpose of protecting officers under investigation is made effective to the fullest extent possible under the language of La. R.S. 40:2531.

41. Any action taken by formal investigating authority, such as the municipal internal affairs department, which could possibly affect the job status of the officer requires that the minimum standards of the statute apply.   Op.Atty.Gen., No. 93-52, April 30, 1993.

42. As police officers at the Nicholl's State University Police Department are entitled to the protections afforded under Louisiana Police Bill of Rights.

43. At all times relevant hereto, Officer Price was a full-time commissioned-police officer with the Nicholl's State University Police Department and employed by the Nicholl's State University, entitled to the protections afforded under Louisiana Police Bill of Rights.

   **B.  Officer Price has been Subjected to a Hostile Work Environment by the Employees at Nicholl's State University Police Department since January 15, 2024, as well as other Violations Title VII of the Civil Rights Act of 1964, and/or Americans with Disabilities Act.**

44. Since April 6, 2022, Officer Price had to undergo a series of auditory tests to determine the hearing loss she was experiencing in the past five years.

45. The outcome of the evaluation is known as an audiogram, which graphs the softest sounds patient has heard during the administration of these auditory tests.

46. After a series of tests with her health care provider, it was determined that Officer Price's right ear had worsened as she was diagnosed with "asymmetric sensorineural hearing loss," which refers to a condition where a person experiences significantly different levels of hearing loss between their two ears, meaning one ear has considerably worse hearing than the other, while both ears are affected by sensorineural hearing loss (damage to the inner ear or auditory nerve) in some degree.

47. This type of hearing loss arises from damage within the inner ear or auditory nerve, which is the most common cause of significant hearing loss.

48. It was also determined by the healthcare provider that Officer Price had not reaction to her stapedial reflex in the range of 1000–4000 Hz bilaterally. Stapedial reflex is the contraction of the stapedius muscle in response to an intense sound.

49. This frequency range, 1000 Hz to 4000 Hz, is considered mid-to-high within the human hearing spectrum, meaning the sound would likely be perceived as a moderately high pitch.

50.  Hearing aids can be an effective treatment for asymmetrical sensorineural hearing loss, which was subsequently prescribed by Officer Price's healthcare provider.

51. Trouble started when Officer Price was tasked as a dispatcher and did not receive the two months of training after her initial hiring on January 8, 2024 as a Police Officer 1 for Nicholl's State University. Instead, she received only seven days of training.

52. While in the course and scope of employment Officer Price would wear her hearing aid, which was in need of repair at this point.

53.  Upon notice of the hearing aid, Lieutenant LaVerne J. Glenn, as her superior, forced Officer Price to disclosed her medical information and her hearing impairment.

54. Shortly after this forced disclosure, Lieutenant LaVerne J. Glenn because singling her out and making disparaging comments regarding her hearing. These comments directed at Officer Price in isolated setting and in group settings in front of other co-workers.

55. Specifically, within the first seven days of Officer Price's training, Lieutenant LaVerne J. Glenn raised her voice to her in front of others and yelled as follows: "I'm not trying to sound like a bi---, but you better step the fu-- up because those officers are not gonna put up with your fu--ing shit. You better wear your hearing aids from now on."

56. Specifically, Lieutenant LaVerne J. Glenn constantly asked about Officer Price's status of hearing, her ability to perform her job, and whether other or not Officer Price was seeking treatment.

57. Throughout the duration of these months Lieutenant LaVerne J. Glenn constantly behaved in a manner in which her actions presume that Officer Price was completely deaf, singling her out in the group of dispatchers:

   A.  By often signaling her out to speak to her in a raise voice;

   B.  By often insinuating to her she may be "slow" since she is "deaf";

   C.  By slamming and banging the window for the entrance of the office location of the Nicholl's State University Police Department;

   D.  By repeating herself in a manner to insinuate that her "deafness" is equivalent to Officer Price's intelligence—or lack thereof.

   E.  By insinuating that her lack of knowledge equated to her "deafness" and not to the lack of training provided.

58. Specifically, Lieutenant LaVerne J. Glenn had actual knowledge as early as January 15, 2024, regarding that Officer Price just had difficulty hearing from her right ear in a certain tone and pitch.

59. At all times described herein, Officer Price was subjected an abusive work environment, affecting her psychological well-being, with the purpose of discouraging her from remaining on the job, and/or with the intention of keeping her from advancing in her career.

60. Upon information and belief, Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, directed certain subordinate employees, and Officer Price's direct supervisors, Lieutenant LaVerne J. Glenn, and Lieutenant Christy R. Hawxhurst, and others like Jessilyn K. Terrebonne, to engage in disability-based discriminatory conduct that was so severe or pervasive that it created an abusive working environment.

61. Alternatively, or additionally, upon information and belief, Director of Human Resources, Alison Hadaway, shared Lieutenant LaVerne J. Glenn's views and exhibited a retaliatory animus against Officer Price for filing her protected EEO activities, further subjecting her to unwelcomed harassment on a daily basis.

62. Further, in alternative, or additionally, upon information and belief, Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Lieutenant Christy R. Hawxhurst, and Jessilyn K. Terrebonne shared Lieutenant LaVerne J. Glenn's animus for hearing impairments and against Officer Price, as any request for training, advancement on her career were consistently denied in favor of less qualified employees.

63. Upon information and belief, the practice and favoritism are so pervasive or severe that only employees favoring Nicholl's State University Police Department Chief, Chief Alexander C. Barnes thus far have been promoted to management/supervisor level.

64. Under all incidents herein, Nicholl's State University knew or should have known of the harassment and failed to take prompt, remedial action.

65. On or about March 24, 2024, Officer Price was written-up an incident that occurred on March 19, 2024 at approximately 12:43 p.m.

66. Lieutenant Christy R. Hawxhurst allegedly overheard an alarm sounding from the dispatch area wherein Officer Price worked. She informed Lieutenant Christy R. Hawxhurst that she did not hear the alarm at the time, but responded to the alarm as it was related to the water pump malfunction at the residence hall.

67. The write-up further noted that Lieutenant Christy R. Hawxhurst and Lieutenant LaVerne J. Glenn have previously addressed Officer Price's "inability to hear radioing dispatch" in Officer Price's February 2024 evaluation.

68. The write-up also noted "Officer Price has been observed not wearing a hearing aid while on duty and the problems with her being alert to sounding alarms and radio traffic have persisted."

69. In reality, the write-up was pretextual as the sound was so faint that several other officers within the building would not be able to hear the noise.

70. Further, the write-up mentioned that she was utilizing her personal cellphone, when both Lieutenant LaVerne J. Glenn and Jessilyn K. Terrebonne watched movies and television shows on the computer.

71. Officer Price did not receive the copy of this write-up that and had no choice but to sign such document. She could not write her objections nor dispute these write-up allegations and was not given any opportunity to do so.

72. Most importantly, she was not afforded, as a police officer the protections enumerated under the La. R.S. 40:2531 ("Louisiana Police Bill of Rights").

73. Officer Price was removed from her regular schedule, and forced to be paid using her compensation time until March 28, 2024 for the pay period of March 16, 2024 through March 29, 2024, which was paid on April 5, 2024.

74. This directly goes against the Louisiana Police Bill of Rights, which provides: "There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity." La. R.S. § 40:2531(C).

75. On April 3, 2024, Officer Price informed Director of Human Resources, Alison Hadaway, that she had bronchitis and fever and would be unable to return until April 5, 2024 and provided documentation.

76. Further, Director of Human Resources, Alison Hadaway, informed Officer Price that if you do not use your comp-time, it would be considered leave without pay. She further informed Officer Price that "You can only be paid hours worked unless you use accumulated leave hours saved."

77. Officer Price was paid for thirty-six (36) hours instead of eighty (80) hours as a result for the pay period of March 16, 2024 through March 29, 2024, which was paid on April 5, 2024.

78. On April 11, 2024, Officer Price filed a grievance against Lieutenant Christy R. Hawxhurst, Lieutenant LaVerne J. Glenn and Jessilyn K. Terrebonne for the constant harassment, hostile work environment and request for accommodation per the American Disabilities Act to Director of Human Resources, Alison Hadaway.

79. Two hours later, Officer Price received an email from Lieutenant Christy R. Hawxhurst to report to work on Monday, April 15, 2024.

80. Upon her resumption of employment, and after her complaint of to Director of Human Resources, Alison Hadaway, the level of hostility and animus exhibited by Lieutenant Christy R. Hawxhurst, Lieutenant LaVerne J. Glenn and Jessilyn K. Terrebonne intensified.

81. During such time, upon information and belief, since April 11, 2025, Lieutenant Christy R. Hawxhurst, Lieutenant LaVerne J. Glenn and Jessilyn K. Terrebonne continued to harbor disability-based animus against Officer Price, and now harbored retaliatory animus against her because of Officer Price's harassment complaint, now sanctioned by Chief Alexander C. Barnes and Director of Human Resources, Alison Hadaway.

82. Officer Price's supervisors immediately began issuing her pretextual counseling or discipline for various alleged poor performance or not following directions.

83. During the relevant time period, Officer Price's first and second-line supervisors were Lieutenant LaVerne J. Glenn, and Lieutenant Christy R. Hawxhurst.

84. Upon information and belief, Officer Price's work was satisfactory, but her supervisors issued her unsatisfactory evaluations for the pretextual purpose of eventually terminating Officer Price because of her disability and in retaliation against her for engaging in protected EEO activity and requesting reasonable accommodations.

85. During this time period the level of hostility further increased against Officer Price to the level of effecting both her physical and mental health.

86. On April 15, 2025, Officer Price, upon her first day returned, was issued a written reprimand "that required remedial training on dispatch duties and operations."

87. Disregarding the policies enacted regarding workplace harassment, Director of Human

Resources, Alison Hadaway, did not conduct an investigation regarding Officer Price's reporting.

88. Officer Price emailed Alison Hadaway regarding the investigation on April 22, 2024, and was not informed.

89. Only upon, request Alison Hadaway informed Officer Price: "I have completed a series of questions to individuals in the department about this situation. No one that I have spoken to has had the same experience as you with either of these individuals. I was not able to find anyone to corroborate what was presented. I have spoken with the Chief about the situation and made him aware of the information you provided. Should any future situations arise, please notify him immediately."

90. In reality, none of the other employees aside from Lieutenant Christy R. Hawxhurst, Lieutenant LaVerne J. Glenn and Jessilyn K. Terrebonne were questioned.

91. On April 23, 2024, Chief Alexander C. Barnes emailed Officer Price stating that she did not complete another Dispatch/PO1 Training Checklist.

92. Chief Alexander C. Barnes further noted that "I have noticed what appears to be a pattern of rebellion to things that are requested of you with a complete disregard to policy and procedures. Specifically: 1. Repeated failure to submit leave requests in accordance with Nicholls State University Policy. You have been advised of this policy numerous times now but continue to take leave without filing the request. 2. Repeated failure to complete leave requests in a timely manner per University Police Policy. 3. Failure to submit Dr excuse after calling in sick and an excuse being requested. You were advised of the difficulty opening the email and was told to provide a hard copy. You have since returned to work and failed to provide said copy upon your return. (Ref to 4/1 to 4/4/24)."

93. Nicholls State University's *Policy & Procedure Manual* under 4.21.3 provides as follows:

> "Leave under the above subsection may only be used when approved by the appointing authority or his designated representative.
> Employees should report absence from work because of illness, 1) to supervisors preferably at least two hours prior to the time that they are expected to be on duty, but no later than the time when they are scheduled for duty, or 2) designate someone who will reliably give this notification within the specified time if they personally are physically unable to do so. Employees must still make the effort to contact their supervisor as soon as they are physically able. Because departments operate on different schedules, this time may vary. If so, the supervisors will inform employees of the time for their department. As soon as employees return to work, they must complete a leave application form, stating the cause of the absence. The appointing authority may require a statement from a registered physician or some other acceptable proof that the employee was ill and unable to report to work."

94. In reality, Officer Price provided notification to her superior regarding her health issues, documentation when requested over two to three times, and completed the leave applications.

95. Officer Price was seen in the Emergency Department on Terrebonne Hospital, which required her to stay at home from April 16, 2024 through April 22, 2024.

96. She again had a meeting with her physician on April 23, 2024, wherein her physician provided documentation that it was advised she not return to work until April 29, 2024.

97. She again had another meeting with her health care provider on May 1, 2025, which again she provided documentation.

98. In reality, there is no policy in place to have a physical copy of a doctor's note presented and it was common practice and custom to email such documentation to Nicholl's State University Police Department.

99. Further, absolutely zero accommodations were provided to Officer Price regarding her request of accommodation due to her disability.

100. This effectively created such a hostile environment that interfered with the Officer Price's ability to perform her job effectively or impact her mental and physical well-being, making the

workplace intolerable.

101.    Upon information and belief, these were the primary motivations to create such a hostile
or abusive work environment was to affect Officer Price's psychological well-being, with the
purpose of discouraging her from remaining on the job, and/or with the intention of keeping
her from advancing in her career.

102.    Officer Price avers that Chief Alexander C. Barnes, had been showing personal animus and
exhibiting harassing behavior towards her by attempting to create paperwork and
documentation on all matters. This double standard existed as other employees were not
subjected to the same requirements.

103.    On May 3, 2024, at 4:35 p.m., Officer Price without any notice or hearing was terminated
from her position.

104.    As alleged throughout this lawsuit, Officer Price was terminated on May 3, 2024, because
of disability-based discrimination and in retaliation for her prior, protected EEO activities.

105.    As alleged throughout this lawsuit, these discriminatory and retaliatory adverse
employment actions were taken against Officer Price by, upon information and belief,
Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, directed her
subordinate employees, and Officer Price's direct supervisors, Lieutenant LaVerne J. Glenn,
and Lieutenant Christy R. Hawxhurst, , Director of Human Resources, Alison Hadaway, and
others like Jessilyn K. Terrebonne, who were each at all relevant times acting within the full
course and scope of their employment with Nicholl's State University, and as agents of USPS.

106.    At all relevant times, upon information and belief, Nicholl's State University, its
executives, officers, and as an institution, knew or should have known of these

discriminatory and retaliatory adverse employment actions, but took no steps to protect Officer Price from them.

107.    Despite her diligent efforts, Officer Price has been unable to find reasonably equivalent replacement work and her non- selections for employment as described above.

108.    Because of Nicholl's State University Police Department's unlawful employment actions in this case, Officer Price has suffered significant lost back wages, including wages, lost insurance, and other fringe benefits.

109.    Because of Nicholl's State University Police Department's unlawful employment actions in this case, Officer Price will likely suffer significant lost future wages.

110.    Because of Nicholl's State University Police Department's unlawful employment actions in this case, Officer Price has suffered significant out of pocket expenses, including self-employment expenses related and loss of income, and also reasonable attorney's fees and litigation costs incurred in this matter.

111.    At all times described herein, the Defendants were acting under color of law in their capacities as police officers for the Nicholl's State University Police Department.

112.    At all times described herein, the Defendants' conduct was intentional and malicious. In the alternative, the Defendants' conduct was committed with deliberate indifference and/or reckless disregard for the Plaintiff's federal constitutional rights.

113.    At all times described herein, the Defendants were acting under color of law in their capacities as police officers for the Nicholl's State University Police Department.

114.    At all times described herein, the Defendants' conduct was intentional and malicious. In the alternative, the Defendants' conduct was committed with deliberate indifference and/or reckless disregard for the Plaintiff's federal constitutional rights.

## V. CAUSES OF ACTION

### A.  Count One: 42 U.S.C. § 1983—Violation of the 4th and 14th Amendments of the United States Constitution.

(Defendants: Board of Supervisors of The University of Louisiana System, Chief Alexander C. Barnes, and Director of Human Resources, Alison Hadaway)

115.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-114, above.

116.    In Louisiana, police employees with permanent status in the classified civil service have a property interest in their employment and cannot be terminated or disciplined except for cause and with due process of law. La. Const. Art. I, § 2, and Art. X, § 8; *Bell v. Dep't of Health and Human Resources*, 483 So. 2d 945 (La. 1986), *cert. denied*, 479 U.S. 827, 107 S. Ct. 105, 93 L.Ed. 2d 55 (1986).

117.    Upon information, Plaintiff was a Civil Service classified employee under the Civil Service Rules.  As such, the Plaintiff could be terminated from his employment only for good cause. She therefore had a property interest in his employment that was protected by the due process clause of the Fourteenth Amendment.

118.    The Plaintiff also possessed the rights and protections afforded by La. R.S. 40:2531 *et seq.,* the Police Officers' Bill of Rights, which sets forth the mandatory minimum procedures and substantive prerequisites to discipline, suspend, and/or terminate law enforcement officials.

119.    An "interrogation" of a police officer facing possible disciplinary action, as would trigger certain requirements for conduct of interrogation pursuant to Police Officer's Bill of Rights, contemplates the formal or systematic questioning of a law enforcement officer. *White v. City of Mandeville,* 2023-0880, p. 5 (La. App. 1 Cir. 2/23/24); 387 So.3d 612, 616.

120.    La. R.S. 40:2531, the Police Officer's Bill of Rights, which specifies the minimum standards to be followed when a police employee or law enforcement officer is under investigation and faces possible disciplinary action, demotion or dismissal.

121.    Specifically, the Louisiana Police Bill of Rights states as follows: Further, as found in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985), before any employee with permanent status may be discharged, he is entitled to oral or written notice of the charges against him, an explanation of his employer's evidence, and an opportunity to present his side of the story.

122.    To meet the requirements of procedural due process, an employee's right to notice and an opportunity to be heard must be extended at a meaningful time and in a meaningful manner. *Moore v. Ware*, 01-3341, p. 13 (La. 2/25/03), 839 So. 2d 940, 949; *White v. City of Mandeville*, 2023-0880, p. 6 (La. App. 1 Cir. 2/23/24); 387 So.3d 612, 617.

123.    Louisiana Police Bill of Rights, which provides: "There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity." La. R.S. § 40:2531(C).

124.    Prior to the Write-Up on March 24, 2024, Officer Price did not receive notice of charges against her, an explanation of employer's evidence, or opportunity to present her side of the story.

125.    None of the interrogations of Officer Price or any police employee or law enforcement

officer in connection with the investigation was not recorded in full.

126.   She was further prohibited from obtaining a copy of the recording or transcript of the recording of her statements upon her written request because it was not recorded.

127.   She was not given the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.

128.   Prior to her termination on May 3, 2024, again Officer Price was not afforded those rights mentioned above.

129.   The Plaintiff's statutory entitlement to pre-termination substantive procedures give rise to a protected due process interest under the Fourteenth Amendment.

130.   As described in this Complaint, the Defendants engaged in a pattern disclosure in order to retaliate against the Plaintiff and to create an intolerable work environment.  In this manner, the Defendants have actively attempted to undermine Plaintiff in order to have her quit her employment.  These activities, which were taken under color of law, violated Plaintiff's right to substantive and procedural due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

131.   The Defendants, Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Lieutenant Christy R. Hawxhurst, and Director of Human Resources, Alison Hadaway, conduct was intentional and malicious when she disclosed Plaintiff's health when there was no right to do so.

132.   In the alternative, the Defendants, Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Lieutenant Christy R. Hawxhurst, and Director of Human Resources, Alison Hadaway conduct was committed with deliberate indifference and/or reckless disregard for the Plaintiff's federal constitutional rights.

133.    These activities, which were taken under color of law, violated Plaintiff's right to substantive and procedural due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

134.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

135.    Because of Defendants' actions, and possibly other employees, agents, and/or representatives of the Nicholl's State University Police Department and/or employee of Nicholl's State University, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.,* No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (*quoting Smith v. Wade,* 461 U.S. 30 (1983)).

### B.  Count Two: *Monell* Violation.

(Defendants: Board of Supervisors of The University of Louisiana System and Chief Alexander C. Barnes,)

136.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-135, above.

137.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be

chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

138.    The elements of a *Monell* claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. *Dean v. Wexford Health Service, Inc.,* 18 F.4th 214, 235 (7th Cir. 2021).

139.    Defendant Chief Alexander C. Barnes who is considered the final policy maker for the Nicholl's State University Police Department, which is an agency of the Nicholls State University for the Board of Supervisors of The University of Louisiana System.

140.    As described above, Defendant Chief Alexander C. Barnes engaged in a pattern consistent with and as a result of Nicholl's State University Police Department's customs, patterns, practices, and/or procedures, Defendants unjustifiably and unlawfully violated Plaintiff's constitutionally protected rights.

141.    As a direct and proximate result of the Nicholl's State University Police Department customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution as well as state constitution were violated under the Louisiana Police Bill of Rights.

142.    Plaintiff further avers the protections afforded under Louisiana Police Bill of Rights are routinely violated as four other police officers within the past year have faced these violations.

143.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe

emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

144.    Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Nicholl's State University Police Department, through its policymaker, Defendant Chief Alexander C. Barnes (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by Plaintiff.

145.    As such, Defendant Chief Alexander C. Barnes, in his official capacity, and the Board of Supervisors of The University of Louisiana System are liable for the violation of the Plaintiff's constitutional rights, as described herein.

### C.  Count Three: State Law—Invasion of Privacy under La. C.C. art. 2315.

<u>(Defendants: Board of Supervisors of The University of Louisiana System, Lieutenant Christy R. Hawxhurst, and Director of Human Resources, Alison Hadaway)</u>

146.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-145, above.

147.    "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5.

148.    In Louisiana jurisprudence, the right to privacy has been variously defined as "the right to be let alone" and "the right to an 'inviolate personality.'" *Pack v. Wise,* 155 So.2d 909, 913 (La. App. 3d Cir. 1963).

149.    Where an individual has such a right, in the form of one of the interests outlined above, other members of society have a corresponding duty not to violate that right. A violation constitutes a breach of duty, or fault, and may be actionable under C.C. 2315, which provides that "(e)very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." *Jaubert v. Crowley Post-Signal, Inc.,* 375 So.2d 1386, 1388–89 (La.1979).

150.    The Plaintiff had a reasonable expectation of privacy in and to the information concerning the accusations of misconduct in accordance with La. Const. Art. 1 § 5 and Louisiana jurisprudence regarding invasion of privacy.

151.    The Defendants who communicated the information to the regarding her disability and demanded her medical records that violated the Plaintiff's right to privacy under La. Const. Art. 1 § 5.

152.    At all times relevant herein, Lieutenant Christy R. Hawxhurst as well as Director of Human Resources, Alison Hadaway used Office Price's individual's name or likeness; (2) unreasonably intruded on disclosing Plaintiff's health status and job status; (3) gave publicity which unreasonably placed Officer Price's in a false light before the public; and (4) made unreasonable public disclosures of embarrassing private facts regarding her hearing disability.

153.    In general, employees, as Officer Price, generally cannot be required to disclose a disability unless requesting a job accommodation. Most importantly, this medical information can't be shared with others in the workplace or third parties.

154.    Plaintiff has been injured by Defendants' conduct and have suffered damages as a result.

155.    Defendants had a duty to use reasonable care in protecting Plaintiff's health information arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards and federal laws to protect confidential Plaintiff's health status.

156.    Defendants breached its duties, and thus was negligent, by failing to use reasonable measures to protect Officer's medical information regarding her health, and by failing to provide timely notice of the such breach.

157.    As a result of the conduct or actions of Defendants, Plaintiff suffered damages, economic

loss, inconvenience, and emotional distress.

### D.  Count Four: State Law—Intentional Infliction of Emotional Distress under La. C.C. art. 2315.

(Defendants: Board of Supervisors of The University of Louisiana System, Lieutenant Christy R. Hawxhurst, and Director of Human Resources, Alison Hadaway)

158.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-157, as if fully set

forth herein.

159.    Defendants committed Intentional Infliction of Emotional Distress ("IIED") against

Officer Price by spreading private and privileged statements regarding Officer Price's hearing

and disability.

160.    Defendants above-described conduct, including, but not limited to, her lodging of

disclosing private medical information and outcome of her job position was extreme and

outrageous.

161.    Officer Price has suffered and will continue to suffer severe emotional distress from these

groundless assaults on disability so much that she started to suffer from anxiety, baldness, high-

blood pressure.

162.    Upon information and belief, Defendants and other named and unnamed defendants

knowingly and willingly assisted Lieutenant Christy R. Hawxhurst in committing these

tortious actions.

163.    Accordingly, Defendants, are liable for the IIED against Officer Price in relative shares to

be determined in accordance with either: (a) comparative fault under La. Civ. Code art. 2323;

or (b) as solidary or joint tortfeasors under La. Civ. Code art. 2324.

### E.  Count Five: State Law—*Respondeat Superior* under La. C.C. art. 2315.

26

<u>(Defendant: Board of Supervisors of The University of Louisiana System)</u>

164.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-163, above.

165.    All Defendants' acts described herein were undertaken in the course and scope of their employment with the Nicholls State University for the Board of Supervisors of The University of Louisiana System. Accordingly, the Board of Supervisors of The University of Louisiana System is liable for all state law torts alleged herein.

### F.  Count Six: State—Vicarious Liability under La. C.C. art. 2315.

<u>(Defendant: Board of Supervisors of The University of Louisiana System)</u>

166.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-165, above.

167.    The Board of Supervisors of The University of Louisiana System is vicariously liable for Defendants Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Lieutenant Christy R. Hawxhurst, Director of Human Resources, Alison Hadaway, and others for their tortious conduct (made pursuant to state law,) identified in this Complaint because Defendants were acting within the course and scope of their employment as a as employees at the time they committed these wrongs.

### G.  Count Seven: Hostile Work Environment Pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000 *et seq.*
<u>(Defendant: Board of Supervisors of The University of Louisiana System)</u>

168.    Officer Price incorporates by reference the allegations already made in ¶¶ 1-167, above.

169.    Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

170.    To establish a *prima facie* case of a hostile work environment, a plaintiff must show the following: (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the complained-of harassment was due to her membership in a protected group (e.g., due to her race), (4) the harassment complained of affected a term, condition, or privilege of her employment, and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action. *Mendoza v. Helicopter*, 548 F. App'x 127, 128–29 (5th Cir. 2013).

171.    Nicholls State University is an "employer" subject to the provisions of Title VII.

172.    Plaintiff is a female and is therefore a member of a protected class.

173.    Plaintiff was qualified for her position as a Police Officer 1. Not only did Defendant specifically hire Plaintiff for the position, but Plaintiff was able to perform all functions of her job satisfactorily.

174.    Plaintiff was subjected to severe and/or pervasive harassment on the basis of her gender from as early as January 15, 2024 through, May 3, 2024.

175.    As such, Plaintiff suffered an adverse employment action for purposes of establishing a Title VII claim, as she was termined on May 3, 2024.

176.    As set forth in the preceding paragraphs, Director of Human Resources, Alison Hadaway and Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Jessilyn K. Terrebonne shared Lieutenant LaVerne J. Glenn's exhibited their animus for the female sex and their preference for male employees against Officer Price, as any questions of her qualifications were insinuated in favor of less qualified male employees.

177.    Upon information and belief, the practice and favoritism are and were so pervasive or severe that only two female employees thus far have been promoted to management/supervisor level.

178.    Plaintiff's gender, being a female, was a determining and motivating factor in treating Plaintiff less favorably than male employees.

179.    Defendant failed to act in accordance with 42 U.S.C. § 2000e.

180.    Defendant's discrimination is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

181.    As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

182.    Accordingly, the Board of Supervisors of The University of Louisiana System is liable to Officer Price for all statutory and equitable damages caused by other named Defendants and unnamed employees for their illegal Title VII discrimination, including lost back wages, lost future wages, and specific compensatory damages.

### H. Count Eight: Hostile Work Environment Pursuant to Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

(Defendant: Board of Supervisors of The University of Louisiana System)

183.    Officer Price incorporates by reference the allegations already made in ¶¶ 1-182, above.

184.    A cause of action for disability-based harassment is "modeled after the similar claim under Title VII." *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998). Accordingly, to establish a *prima facie* case of disability-based harassment, the Officer Price must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take

prompt, remedial action. *Flowers v. S. Reg'l Physician Servs. Inc*., 247 F.3d 229, 235–36 (5th Cir.2001).

185.    Plaintiff has a hearing disability who was an employee and is therefore a member of a protected class.

186.    Here, Officer Price belongs to a protected group as she has a hearing limitation that is a disability; for all the actions alleged above, she was subjected to unwelcome harassment; further the harassment complained of was based on her disability or disabilities; that the harassment complained of affected a term, condition, or privilege of employment as listed in detail above paragraphs; and that Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, as well as  Nicholl's State University, Director of Human Resources, Alison Hadaway knew or should have known of the harassment and failed to take prompt, remedial action.

187.    Plaintiff was subjected to severe and/or pervasive harassment on the basis of her disability from January 15, 2024 through, at least, May 3, 2024.

188.    As alleged in paragraphs ¶¶ 1-187, the harassment Plaintiff suffered was based on her disability.

189.    Plaintiff was subjected to unlawful discrimination on the basis of her disability. As set forth in the preceding paragraphs, Plaintiff, witnessed and was subjected to disparaging comments on an almost daily and recurrent basis. Plaintiff could not work without Lieutenant Christy R. Hawxhurst other named Defendants and unnamed employees making some charged, derogatory comment regarding her hearing.

190.    As such, Plaintiff has suffered an adverse employment action for purposes of establishing an American Disabilities Act.

191. Upon information and belief, Nicholl's State University only agreed to have Officer Price return to work on April 15, 2024, so that they could gin-up pretextual performance issues against Officer Price in order to create such an abusive working environment for the ultimate purpose of terminating her employment and escape further liability for their original disability and other status-based animus against Officer Price.

192. Alternatively, or additionally, upon information and belief, Director of Human Resources, Alison Hadaway and Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Jessilyn K. Terrebonne shared Lieutenant Christy R. Hawxhurst and Lieutenant LaVerne J. Glenn's disability-based discriminatory and retaliatory animus against Officer Price and engaged in conduct to create a hostile work environment for the same reasons as described above.

193. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

194. Accordingly, the Board of Supervisors of The University of Louisiana System is liable to Officer Price for all statutory and equitable damages caused by other named Defendants and unnamed employees for their illegal ADA discrimination, including lost back wages, lost future wages, and specific compensatory damages.

**I. Count Ten: Discrimination Pursuant to Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.***

<u>(Defendant: Board of Supervisors of The University of Louisiana System)</u>

195. Officer Price incorporates by reference the allegations already made in ¶¶ 1-195, above.

196.    Pursuant to 42 U.S.C. § 12112 (a), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

197.    The ADA limits the scope of information that employers may seek and disclose about their employees' medical condition. See 42 U.S.C. § 12112(d)

198.    "An employer should not place any medical-related material in an employee's personnel file." (quoting Equal Employment Opportunity Technical Assistance Manual § 6.5); *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 968 (8th Cir.1999) (finding commingling of drug test results with personnel records a violation of the ADA); *Pouliot v. Town of Fairfield,* 184 F.Supp.2d 38, 54 (D.Me.2002).

199.    Despite the confidential nature of the confidential medical information as aforesaid, Director of Human Resources, Alison Hadaway and Lieutenant Christy R. Hawxhurst and and/or its agents and/or employees took no steps whatsoever to protect and/or safeguard the medical information of Plaintiff results from unauthorized disclosure and/or dissemination.

200.    Upon information and belief, Defendant, or any of them, failed to maintain health results on separate forms and/or in separate medical files as mandated by 42 U.S.C. § 12112.

201.    In fact, Director of Human Resources, Alison Hadaway and Lieutenant Christy R. Hawxhurst requested Plaintiff's medical paperwork either in person or by emails to be provided.

202.    Due to the failure of Defendant and/or their employees and/or agents to maintain the drug and alcohol test results as confidential medical information, the results of Plaintiff's disability health status were disseminated to other employees.

203.    As a result of Officer Price's unauthorized disclosure of medical information resulted in a "tangible injury."

204.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

205.  Accordingly, the Board of Supervisors of The University of Louisiana System is liable to Officer Price for all statutory and equitable damages caused by other named Defendants and unnamed employees for their illegal ADA disclosures, including lost back wages, lost future wages, and specific compensatory damages.

## VI. DAMAGES

206.    Officer Price suffered anxiety, mental anguish, embarrassment, and humiliation as a result of the extreme and outrageous actions of Defendants, her person and property and the deprivation of his liberty. In addition to mental anguish, humiliation, and embarrassment, Officer Price has suffered from anxiety and depression causing her to loose hair and have high blood pressure.

207.    The intentional and negligent acts of Defendants, as set forth herein, combined to cause deprivations of Plaintiff's constitutional and civil rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, Title VII and ADA as well as state tort laws under La. C.C. art. 2315, 2320, 2324; and state constitutional right to privacy under La. Const. Art. 1, Sec. 5.

208.    Plaintiff seeks monetary damages in the following categories:

A.     Mental Anguish, past, present, and future;

B.     Post-traumatic stress disorder;

C.     Embarrassment, humiliation and loss of enjoyment of life;

D.     Damage to professional and personal reputation;

E.     Attorney's fees; and

F.     Punitive Damages.

## VI. JURY TRIAL DEMAND

209.   Officer Price demands a trial by jury on all issues and causes of action in this matter.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Rochelle Price**,** prays that her complaint be deemed good and sufficient; that it summons be served upon Defendants Nicholl's State University Police Department Chief, Chief Alexander C. Barnes, Lieutenant Christy R. Hawxhurst, Director of Human Resources, Alison Hadaway, and, in their official capacity as well as the Board of Supervisors of The University of Louisiana System; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant declaring that defendant did intentionally discriminate and retaliate against plaintiff based on her disability and prior EEO activity, an injunction prohibiting the defendant from engaging in future unlawful practices based on age and retaliation, and for all damages and equitable relief due to plaintiff, including back wages, reinstatement or front wages, specific compensatory damages, reasonable attorney's fees and litigation costs, and all other appropriate, equitable relief.

Respectfully Submitted,

34

**THE KHAN LAW FIRM, L.L.C.**
Shermin S. Khan (Bar Roll No. 37748)
s.khan@sklawla.com
T. Alexander Hartford (Bar Roll No. 41270)
a.hartford@sklawla.com
2714 Canal Street, Suite 300
New Orleans, LA 70119
Telephone: (504) 354-9608
Facsimile: (504) 459-2918
*Attorneys for Rochelle Price*